In re Linda Lorraine PILCHER, Debtor.

Linda Lorraine PILCHER, Plaintiff,

v.

HEMAR SERVICE CORPORATION OF AMERICA and Hemar Insurance Corporation of America, Defendant.

HEMAR INSURANCE CORPORATION OF AMERICA, Counter Plaintiff,

v.

Linda Lorraine PILCHER, Counter Defendant.

Bankruptcy No. B–91–07200–PCT–GBN.

Adv. No. 91–705–GBN.

United States Bankruptcy Court, D. Arizona.

May 7, 1992.

Linda Lorraine Pilcher, pro se.

Alan M. Levinsky, Anderson, Brody, Levinson, Weiser & Horwitz, Phoenix, Ariz., for Hemar Ins. Corp. of America.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

On December 1, 1988, Debtor Linda Lorraine Pilcher executed a promissory note payable to Norwest Bank South Dakota, a national association, for $9,917.00. The note evidences an educational loan made to debtor under the Law Access Loan program ("LAL"). LAL is a privately insured loan program designed to meet the needs of law school students and their parents. It is cost-based, not need-based. The amount of the LAL loan is based on the cost of education, less other financial aid. Creditworthy applicants at any income level may be eligible.

In addition to paying an origination fee, the applicant pays an insurance premium. Insurance premiums range from 6.0% to 10.875%, depending upon whether applicant defers interest during school or has a cosigner. Applicant's credit history is reviewed. The debt is not canceled in the event of death or total disability.

Hemar Insurance Corporation of America ("HICA") insures private law access loans.

The promissory note was endorsed and assigned by the Student Loan Marketing Association ("SLMA") to HICA. HICA has paid the note under the terms of its guarantee, and now owns the obligation.

### I

Debtor filed her Chapter 7 case on June 20, 1991. She filed this adversary proceeding on August 12, 1991, seeking determination that her student loan was dischargeable under § 523(a)(8). The complaint states the total of her loan amounts to $12,280.63. Hemar Service Corporation of America ("HSCA") was the initial defendant. The Court allowed HICA to intervene.

Debtor argues her student loan was made by a "for profit" institution and was

not federally subsidized. Accordingly, this debt is alleged not to be within the purview of § 523(a)(8).

## II

The creditor responds that debtor's law school loan arises under the Law Access Loan program, also known· as the Law Plan. Through this plan, a student has access to several educational loans through a single program and single application. One lender originates all loans.

The Law Plan Multi–Party Agreement creates the Law Plan program. Both the Higher Education Assistance Foundation ("HEAF") and HICA insure particular types of loans. Since HEAF, a nonprofit corporation, provides substantial funding to the Law Access Loan Program, debtor's educational loan is nondischargeable under § 523(a)(8), defendants argue.

## III

The facts are undisputed. Debtor executed an LAL promissory note in favor of Norwest Bank, which was insured by HICA. The note later was assigned to SLMA. When debtor defaulted, SLMA filed a claim against HICA under the surety agreement. SLMA then assigned the note to HICA, the present owner.

At issue is whether the debt is nondischargeable under § 523(a)(8). Under the statute, a debtor is not discharged from a debt for an education loan made, insured or guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or nonprofit organization.

The parties do not allege the loan was made, insured or guaranteed by a governmental unit. The issue is whether the loan was funded in whole or in part by a nonprofit institution. Section 523(a)(8) makes an educational loan nondischargeable if two requirements are met. First, the loan must be made through· a program for providing education loans. Second, the program must be funded, at least in part, by a nonprofit organization. *Hammarstrom v. Education Resources Institute (In re*

*Hammarstrom),* 95 B.R. 160, 165 (Bankr. N.D.Cal.1989).

It is clear the loan was made pursuant to an educational loan program. The promissory note is clearly referenced as a "Law Access Loan." The Law Access Information Supplement, attached to debtor's motion, details the LAL program and eligibility. Under the Law Plan Multi–Party Agreement, Norwest Bank agreed with HSCA, a corporation organized under the laws of Minnesota, for origination and servicing of LAL obligations. Contracts were entered between Norwest, HICA and HSCA for processing LAL insurance. The first element of the *Hammarstrom* test has been met.

The second issue is whether the program is funded in whole or in part by a nonprofit organization. *Hammarstrom* held this element is met if a nonprofit institution "plays any meaningful part in providing funds." 95 B.R. at 165.

The LAL note was funded by Norwest. Norwest is a for-profit banking institution. The note was assigned to SLMA. SLMA is established by Congress as a private corporation financed by private capital which serves as a secondary market for student loans. 20 U.S.C. § 1087–2(a). Congress provided, to the extent net income is earned, that dividends may be declared on common stock by the board of directors. 20 U.S.C. § 1087–2(f)(4). In short, SLMA is a for-profit corporation.

Once debtor defaulted, SLMA assigned the note and filed a claim with HICA. HICA is defined in the Multi–Party Agreement as an insurance corporation organized under the laws of South Dakota. Defendants concede HICA is a for-profit organization. There is no evidence any nonprofit institution played a meaningful part in providing funds to the LAL program. Thus, the loan appears dischargeable.

## IV

Defendants try to avoid this result by arguing LAL is part of the Law Plan created by the Multi–Party Agreement. The Court is urged to analyze the Law Plan as the financial aid program rather than LAL.

Defendants argue contributions by non-profit HEAF, insurer under the federal subsidized student loan program, and activities of Law School Admission Services, Inc., a nonprofit corporation that distributes information on the law program, constitutes a meaningful part of the funding. Defendants argue the fact that HICA provided the insurance on the particular loan is irrelevant.

The difficulty with defendants' argument is that the Law Plan is an umbrella effort by various entities to serve as a conduit for providing information to prospective law student borrowers. The Law Plan provides a streamlined application process for borrowing and for identification of the terms and charges for insurance and interest under various programs. The information provided debtor describes the Law Plan as a national program that assures law students' access to three loan programs.

Each loan program remains independent and retains its own requirements, guarantee and insurance packages. Although the Multi–Party Agreement provides all American law schools eligible under the federal subsidized program may participate, HICA has the right, for LAL loans, to require a school to establish a reserve fund if default rates are high.

Among the program differences is that the LAL program allows parents, as well as students, to borrow. The Guaranteed Student Loan Program, a federally subsidized program, is limited to students. Each program has its own interest rates, repayment schedules and forbearance requirements. The Multi–Party Agreement is specifically subject to separate, independent agreements. Each party remains responsible solely for its own performance under the Multi–Party Agreement. To refer to the Law Plan as a program funded in part by a nonprofit organization, goes too far. The proper focus is to look at the specific loan program used by debtor and determine whether it is funded in whole or in part by a nonprofit institution.

This comports with the *Hammarstrom* test for determining whether a program exists. The loan must be made pursuant to a program for providing educational loans. 95 B.R. at 165. The Law Plan did not provide the loan. The loan document refers to the debt as a "Law Access Loan." The only entities mentioned are Norwest Bank and HICA. There is no reference to the Law Plan. This "program" provided no funding for debtor's loan. It merely facilitated the process by providing access to various programs that were available.

In the instant case, it was the LAL program that provided the loan to debtor, not the law plan. To hold otherwise enables a profit organization to boot strap onto the federally guaranteed or nonprofit program provisions and attain nondischargeability.

## V

Defendant HICA's motion for summary judgment is denied; plaintiff's motion for summary judgment is granted.

Plaintiff will promptly serve and file a proposed judgment.